QUINSIGAMOND LAKE STEAMBOAT COMPANY vs. PHŒNIX
INSURANCE COMPANY OF BROOKLYN.

SAME vs. PHŒNIX INSURANCE COMPANY OF HARTFORD.

Worcester. October 5, 1898. — January 6, 1899.

Present: FIELD, C. J., KNOWLTON, MORTON, BARKER, & HAMMOND, JJ.

*Fire Insurance — Permission for Non-occupancy — Waiver — Estoppel
— Evidence.*

A policy of insurance against loss by fire was issued, containing a condition making
it void if the property remained vacant for more than thirty days without the
assent of the insurer. The premises were leased, and were unoccupied for
four months preceding a loss by fire. There was a local board of underwriters,
which was a voluntary association of agents of insurance companies doing busi-
ness in W., the powers and duties of which were purely to establish rates of in-
surance and classify risks to which rates should be applied. The board kept
in each insurance office in W. a card cabinet to which the agents who used the
office had access. The cards in these cabinets stated the classification of risks
and the rates established by the board, and before a risk was insured the agent
was expected to consult the cards for information as to the classification and rate.
When the policy in question was written the property had not been classified by
the board, no rate had been established, and no card relating to it had been placed
in the cabinet; but such classification and rate were made three days later. The
insurer had as agent in W. a partnership composed of several members, one of
whom was an officer of the board, and he and another member of the firm were
present at a meeting of the board when it was voted that "permission be granted,
free of charge, for the" property in question "to be unoccupied a portion of the
year," a rule of the board requiring a charge for vacancy; and a printed card
was issued accordingly and placed in each cabinet, including that in the office of
such firm, which knew of the passing of the vote, the issuing of the card, and
that it was placed in their cabinet. The action of the board was not communi-
cated to or known by the owner or tenant of the property, neither of whom had
applied for a vacancy permit. *Held,* in an action on the policy, that the action
of the board was not a permission for non-occupancy, or a waiver of the condi-
tion in the policy, and did not estop the defendant from relying on the breach of
the condition as a defence.

At the trial of an action upon a policy of insurance against loss by fire, in which a
vote of a local board of underwriters, of which the defendant's agent was a mem-
ber, is relied upon as giving a permit for non-occupancy of the insured premises,
evidence of the existence, organization, and action of the board and its relations
to the defendant is competent, as is also a lease of the property from the plaintiff
to a third person, who was named in the vote.

TWO ACTIONS OF CONTRACT, upon policies of insurance
against loss by fire, issued by the defendants respectively in

the sum of $1,400 each, on the plaintiff's "frame building . . . situate at Woodlawn Grove, Lake Quinsigamond, Worcester." The cases were tried together in the Superior Court, before *Gaskill*, J.

The jury returned a verdict for the plaintiff in each case ; and the defendants alleged exceptions.    The facts appear in the opinion.

*W. S. B. Hopkins*, (*F. B. Smith* with him,) for the defendants.

*W. A. Gile*, for the plaintiff.

BARKER, J.    The plaintiff by policies in the standard form procured insurance for one year from May 18, 1896, on its hotel. In the description of the property were the words " occupied as a hotel throughout the year."    Each policy had a condition under which it would become void if the property insured should become vacant by the removal of the owner or occupant, and so remain vacant for more than thirty days without the assent in writing or in print of the insurer.    The firm of Holt and Irwin were tenants of the insured property.

It was put in evidence by the plaintiff, and was uncontradicted, that from about the middle of November, 1896, the premises were unoccupied.    The fire occurred on or about March 23, 1897.    The plaintiff put in evidence a vote of the local board of underwriters, passed on November 17, 1896, and a card issued by the board to the insurance agents of the district for which the board acted, and contended that the doings of the board had reference to the insured property, and that this evidence would authorize the jury to find for the plaintiff notwithstanding the breach of the condition as to non-occupancy.    Whether this contention was right is the principal question for decision.

From the evidence the jury could find the following facts. The local board of underwriters was a voluntary association of persons who were agents of fire insurance companies doing business in Worcester and Shrewsbury.    The board was organized with officers and written by-laws, and held weekly meetings. Its expenses were borne in the first instance by an insurance exchange in Boston, composed of special agents of insurance companies, among which companies were the defendants, and the exchange was reimbursed by the companies.    A witness who was secretary of the local board testified that its powers

and duties were "purely to establish rates of insurance; determine the classification to which rates shall be applied; classifying risks to which rates should be applied." The by-laws also show that the functions of the board were to establish rates of insurance below which no insurance should be written on property within the territory of the board, as well as to prevent the fostering of prejudice and the making of misrepresentations against the board or its members, or the insurance companies represented in the board. The board kept in each insurance office in Worcester a card cabinet, to which the secretary of the board and the agents who used the insurance office had access. The cards in these cabinets stated the classifications of risks and the rates established by the board, the cards in each cabinet being of the same tenor. They were prepared by the secretary of the board, in accordance with its action from time to time in classifying risks and establishing rates, and were placed by him in the different cabinets. The drawers of the cabinets were arranged according to streets, and each card represented a risk, classified by the board, and the rate established for it by the board. Before a risk is insured the insurance agent is expected to consult the cabinet, and to get from the card his information as to the classification of the risk and the rate of insurance. The secretary of the board put the cards in their places, and, if a card was in substitution for an old one, took out the old card. The secretary when he put in new cards also left in the office proof sheets, which enabled the insurance agent to know what had been put into the cabinet. Copies of all policies and of vacancy permits issued by the different agents, and of modifications or changes made in policies, passed through the hands of the secretary of the local board. All this is done to protect one insurance company against another, so that when a rate is established it leaves simply a minimum rate at which a policy can be written, and it is not in any way obligatory upon any company to write insurance at that rate. The local board had a rule as to vacancy permits, which was changed at the meeting of November 17, 1896, and which both before and after that change required, unless a contrary provision was made in the rating of the risk, a charge for vacancy after thirty days. The charge after the change was, for one month after the thirty days expired, fifty cents for each hun-

dred dollars of the yearly premium, and for six months seventy per cent of the yearly premium. When the policies in suit were written, the property insured had not been classified by the local board, no rate for insurance upon it had been established by that board, and the board had not placed in the cabinets any card regulating the writing of insurance on the property. The rate at which the policies were written was two dollars upon a hundred for one year, the terms of the policy not allowing the property to be unoccupied more than thirty days, and the risk was classified by the board and given this rating on the third day after the policies were written.

Each of the defendants had as agent in Worcester a copartnership composed of four persons. One of these persons was the vice president of the local board in November, 1896. At the meeting of November 17, 1896, this person and one other member of his firm were present. The firm had signed the articles of association of the board, and one of its card cabinets with the card relating to this risk was then in the office of the firm.

At the meeting of November 17, 1896, the local board passed the following vote : " Voted, that permission be granted, free of charge, for the hotel of Holt and Irwin, Lakeside Inn, to be unoccupied a portion of the year." Thereupon printed cards were prepared by the secretary of the board, of the following tenor :

" Lake Quinsigamond and vicinity, Westside.
　　Lake Quinsigamond Steamboat Co.
　　　　Frame hotel at Woodlawn Grove  .  . $2.00
　　　　Contents  .  .  .  .  .  .  .  .  .  . 2.00
　　　　Dining pavilion and contents  .  .  . 2.00
　　Unoccupied a portion of the year.
　　　　Nov. 17, 1896."

One of these cards was put by the secretary into each of the card cabinets, including the cabinet in the office of the firm which was agent of the defendants, and that firm knew of the passing of the vote, the issuing of the card, and that it was placed in the cabinet in their office.

There was no evidence tending to show at whose suggestion the vote was passed, or that the action of the local board was communicated to or known by the plaintiff or his tenants. From the description of the insured property in the policies,

the lease from the plaintiff to Holt and Irwin, and the tenor of the vote and card, the jury might well find that the vote and card referred to the property insured. It was not contended that any application for a vacancy permit was ever made by the plaintiff or his tenants to the defendants or their agents, or that any permit was issued, or assent to non-occupancy given, unless the action of the local board amounted to such assent.

The defendants were instrumental in organizing and maintaining the local board, of which, presumably with their knowledge and assent, their local agents were members. Two copartners of the firm which constituted their local agent were present at the meeting of the board which passed the vote, and the firm received the card issued in consequence of the vote. It might be found from this that the defendants were to be charged with knowledge of the action of the local board, and with assent to that action, whatever it might be held to be when properly construed in connection with the circumstances under which it was taken.

In construing the action of the local board one matter to be considered is that the board neither had nor purported to have power either to make or alter contracts of insurance. So far as appears, the board could classify risks and establish and from time to time change rates, and could take measures to prevent the cutting of rates, and the injury of the business by misrepresentations, and other like means; and there its functions stopped. Its actions do not appear to have been intended to be communicated, or to have been in fact communicated, to the persons who might hold insurance upon property situated within the district, or who might wish to purchase such insurance. On November 17, 1896, the plaintiff's buildings, which had been erected in 1895, were under insurance effected on May 18, 1896, for one year. The insured property had not been classified by the board when the policies were written, and no rate had then been established by it for the risk. A rate had been established for it on May 21, 1896, and was that at which the risk stood insured, or two dollars of premium for one hundred dollars of insurance for one year, without permission for non-occupancy for more than thirty days, unless upon the payment of a charge or increased premium for such non-occupancy. It was within the legitimate power of

the board to lower the rate established by it for the property, by allowing permission for non-occupancy to be granted free of charge, and to communicate this change of rate to all the insurance offices connected with the board for the government of all persons in those offices who should have occasion to deal with the risk. This was plainly the whole purpose of the action of the board in passing the vote and in issuing the card. Even if we should assume that the reason of this action by the board was the probability that the property would be unoccupied during the winter, and that the plaintiff would apply to the defendants for their assent to such non-occupancy free of charge, those circumstances taken in connection with the others which must also be considered could not make the action of the board mean more than a change in its rate, under which the defendants could, if they should see fit, grant the plaintiff permits for non-occupancy without requiring him to pay an additional premium or charge for the permits. In other words, the only permission granted by the vote was permission to the defendants and all other insurers to grant vacancy permits free of charge if they chose.

We are therefore of opinion that the action of the board, although known to and acquiesced in by the defendants, was not in itself a permission to the plaintiff for non-occupancy, or a waiver by the defendants of the conditions of the policies relating to that subject. Nor upon the evidence as it stood could the action of the board estop the defendants from relying upon the conceded breach of the condition as to occupancy as a defence to the policies. In the complete absence of evidence that the action of the board was taken at the request or suggestion of the plaintiff or its tenants, or was communicated to or known by them, or that they suffered the property to become or to remain unoccupied, relying upon the vote or other action of the board, or that they for that reason omitted to apply for the assent to non-occupancy for more than thirty days required by the policies, it could not be found that the plaintiff's position had been changed to its detriment by any reliance upon the action of the board as a permission for non-occupancy. An essential element of estoppel was lacking.

There was no error in the admission of evidence. The existence and organization and action of the board, and its relations

to the defendants, were relevant to the issues upon trial, whether permissions for non-occupancy had been given, whether the conditions upon that subject had been waived, and whether the defendants were estopped from relying upon the breach of the conditions. The lease from the plaintiffs to Holt and Irwin was a proper circumstance to be given in evidence to be used in construing the action of the board upon which the decision of the main issues turned.

The instructions to the jury requested by the defendants should have been given,* and the exception to the refusal to give them, and to so much of the charge as was inconsistent with them, must be sustained.                    *Exceptions sustained.*

---

* The instructions requested were as follows:

"1. If the jury find that the property insured was and had been vacant for more than thirty days at and before the time of the fire without the assent of the defendant company as required in the policy and under the statutes, then the plaintiff cannot recover.

"2. The vote of the board of underwriters in no wise modified the contract of insurance as set forth in the policy.

"3. There is no evidence that the agents had any authority to modify the contract."